# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

MARIANN KIRCHER,

Plaintiff,

-vs-                                            Case No.  2:06-cv-119-FtM-29SPC

CONTINENTAL CASUALTY COMPANY,

Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

_____This matter comes before the Court on the Defendant Continental Casualty Company's Dispositive Motion for Summary Judgment (Doc. # 20) filed on September 11, 2006, and the Plaintiff Mariann Kircher's Motion for Judgment on the Record (Doc. # 21) filed on September 11, 2006.

## FACTS

The Plaintiff was a participant in an employee benefit plan funded by a group insurance policy issued by Continental Casualty Company (Continental). (Ar. H-1-23).  Under the terms of the Policy, Continental possessed the discretionary authority to determine the eligibility for benefits and to interpret the terms and provisions of the Policy. (Ar. H-6).  The Plaintiff was employed by the policy holder Johnson Controls, Inc. in assembly/production.  The Plaintiff ceased working in July 2001 and applied for long term disability (LTD) benefits under the Policy issued by Continental.  The Plaintiff's claim was approved and Continental paid the Plaintiff benefits from January 9, 2002, until June 15, 2005. (Ar. H-1, 62, 82, 69, 431).

In a separate action, the Plaintiff filed for Social Security disability benefits. On May 28, 2003, Administrative Law Judge Michael McGuire found that the Plaintiff was limited to sedentary work with additional limitations. (Ar. H-318).  Judge McGuire held that given the Plaintiff's age and occupational skills she could not make an adjustment to any work that exists in significant numbers and was therefore, disabled under the Social Security Act. (Ar. H-318-319).

In March of 2004, the Plaintiff underwent an upper left lobectomy with subsequent repair of a bronchopleural fistula and postoperative complaints of intercostal neuralgia and neuropathic pain in the left thoricic wall. (Ar. H-161-162).  On July 15, 2004, she was seen by Dr. Velimir A. Micovic, M.D. whose treatment notes stated that the Plaintiff was doing very well on new medication. (Ar. H-223).

After benefits were paid for twenty-four (24) months, a period which ended on January 9, 2004, the Plaintiff was required to demonstrate her continued disability as defined by the Policy.  On August 10, 2004, Continental received a Disability Claim form from the Plaintiff. (Ar. H 299-301). The Plaintiff's Disability Claim form was accompanied by an Attending Physician's Statement from Dr. Razak Dosani, M.D., a treating physician, who diagnosed the Plaintiff with chronic pulmonary disease (COPD), carcinoma of the lung, and ischemic heart disease, with subjective symptom of dyspnea. (Ar. H-300-301).  Dr. Dosani, stated that the Plaintiff could do some sedentary work like counseling on a limited basis. (Ar. H-301).  However, Dr. Dosani diagnosed the Plaintiff as disabled. (Ar. H-301).

On August 19, 2004, the Plaintiff was seen by Dr. Micovic who noted that the Plaintiff's pain had decreased and that she was physically more active. (Ar. H-201).  Dr. Micovic  noted that if the Plaintiff's pain continued to decrease that he was going to reduce her medications again. (Ar. H-222).

On November 2 and 3, 2004, Continental hired a private investigator to obtain video surveillance of the Plaintiff's daily routine. The video shows the Plaintiff driving her car to the mall, to the doctor, and generally running errands. The video from November 3, 2004, shows the Plaintiff hauling a suitcase full of items, and some large plastic containers and loading them into her automobile. The Plaintiff proceeds to the Cape Coral Yacht Club where she spends the afternoon setting up tables at a craft show and selling what appears to be photo albums decorated with home made coverings. The Plaintiff told the private investigator the activities shown in the videos corresponded to her normal daily activities. (Ar. H-603).

Continental had the Plaintiff's medical records and surveillance video independently reviewed by Medical Advisory Group (MAG). Dr. Eric Hermannsen, M.D. reviewed the videos and medical records for MAG and reported his medical findings to Continental. Dr. Hermannsen's called Dr. Dosani as part of his review of the Plaintiff's medical records. According to Dr. Hermannsen, Dr. Dosani stated that he last treated the Plaintiff in March 2005. At that time, Dr. Dosani opined that the Plaintiff's pain was much improved and appeared controlled without her medications. (Ar. H-166). Dr. Dosani stated that she had made good progress and that her cardiac status appeared stable. (Ar. H-166). Dr. Hermannssen reported that it was Dr. Dosani's opinion that the Plaintiff was capable of sedentary work. (Ar. H-166).

Dr. Hermannssen concluded his report by opining that the Plaintiff could work in a full-time capacity with limited aerobic activities, due to her ischemic heart disease and COPD. (Ar. H-168). He also recommended that her walking and standing be limited to fifteen (15) minutes every two (2) hours. (Ar. H-168). Dr. Hermannssen further noted the position should not have a high mental

functioning requirement, such as accounting or any position that would require calculating numbers or processing information in high volumes. (Ar. H-40, 63, 168).

Based upon Dr. Hermannssen's report a Vocational Rehabilitation Manager performed an Employability Analysis to identify occupations that might be suitable for the Plaintiff.  Using America's Job Bank, O'Net Online , and the U.S. Department of Labor Bureau of Labor Statistics Metropolitan Area Occupational Employment and Wage Estimates, the Employment analysis identified three jobs the Plaintiff could perform.  The Analysis found the Plaintiff could be a dispatcher, appointment clerk, and/or  information clerk. (Ar. H-41-42, 63, 83).

On June 15, 2005, Continental notified the Plaintiff that she was no longer eligible for LTD benefits. (Ar. H-61).  The Plaintiff appealed the decision to terminate her benefits. (Ar. H-114). Based upon the Plaintiff's appeal, Continental performed a second medical review of her file. This time the file was sent to University Disability Consortium (UDC).  The UDC review was performed by Dr. Mark Freedman, M.D. a board certified physician in internal medicine.  Dr. Freedman reviewed the Plaintiff's medical reports and surveillance video, however, he was not provided with Dr. Hermannssen's report. (Ar. H-72-80).  Dr. Freedman called Dr. Dosani but his calls were never returned.  He did, however, consult with Dr. Micovic by telephone on February 16, 2006. (Ar. H-75). Dr. Micovic opined that at that time the Plaintiff was doing well "with regard to neuralgic pain, was physically active, no apparent limitations with regard to sedentary to light activities, and had physical findings of hypalgesia and self rated her pain 2-4/10." (Ar. H-75).

After reviewing the Plaintiff's files Dr. Freedman concluded:

> In my medical opinion, the evidence presented does not document functional restrictions/limitations as a result of any medical condition(s) that would preclude her from working "any" work activity as of 6/15/05 and continue to the present.  For the conditions

including; COPD, carcinoma of the lung, CAD, and neuralgic pain there is no evidence in the medical records of restrictions or limitations from a sedentary position. Specifically, her functionality as described in preoperative notes in February of 2004 by Dr. Dosani, and confirmed by video surveillance in November of 2004 are consistent with activities of a sedentary DOL occupation. Specifically, no shortness of breath, dyspnea are described in Dr. Dosani's notes. There are no symptoms of active coronary artery disease and she was treated for a number of chronic medical conditions with anti-hypertensives, ERT, etc. These would not be expected to limit her functionality from a sedentary position. By January of 2005, Dr. Micovic's pain management notes, and our 2/16/06 conversation, described marked improvement of intercostal neuralgia with decline of pain level to 2/10 and good control of her pain symptoms with oral medications. Her examination essentiality described her as being in no acute distress and with regard to functionality, one would not expect restrictions/limitations from a sedentary position based on these medical notes and observed functionality in video surveillance.

(Ar. H-77).

On February 26, 2006, Continental notified the Plaintiff of its final determination that she was no longer eligible for LTD benefits beyond June 15, 2005. In response to Continental's final determination, the Plaintiff filed the instant lawsuit pursuant to the Employee Retirement Income Security Act of 1974 29 U.S.C. § 1001 *et seq*. (ERISA).

## STANDARD OF REVIEW

ERISA claims are subject to three standards of review. Yochum v. Barnett Banks, Inc. Severance Pay Plan, 234 F.3d 541, 543 (11th Cir. 2000). A brief discussion of those standards is appropriate here. In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1984), the U.S. Supreme Court held that ERISA claims should be reviewed *de novo* unless the plan's administrator was also in a position to deny a claim for the benefits. Brown v. Blue Cross Blue Shield of Alabama, Inc., 898 F.2d 1556, 1559 (11th Cir. 1990). In circumstances where

the plan's administrator also has the discretion to deny the claim, the Court should review the plan administrators or fiduciary's decision under the "arbitrary and capricious" standard. <u>Yochum</u>, 234 F.3d at 544. "Finally, if the plan grants the fiduciary or administrator discretion, but the court finds a conflict of interest between the fiduciary or administrator and the company, a 'heighten arbitrary and capricious' standard applies." <u>Id</u>. If the Court finds such a conflict of interest, "the court will consider this conflict in its analysis." <u>Id</u>. The Eleventh Circuit Court of Appeals has held that when an insurance company is the ERISA plan administrator and also responsible for paying claims, "a strong conflict of interest exists making application of the heightened arbitrary and capricious standard appropriate."[1] <u>Brown v. Bellsouth Telecommunications Inc.</u>, 73 F. Supp. 2d 1308, 1319 (M.D. Fla. 1999) (citing <u>Brown v. Blue Cross Blue Shield of Alabama</u>, 898 F.2d at 1562)).

Regardless of whether the regular or heightened arbitrary and capricious review applies, the Court must first review <i>de novo</i> the administrator's decision to determine whether the decision was right or wrong. <u>HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.</u>, 240 F.3d 982, 993 (11th Cir. 2001) (citing <u>Godfrey v. Bell Telecommunications, Inc.</u>, 89 F.3d 755, 758 (11th Cir. 1996) (holding that a <i>de novo</i> review must first be held to decide if the administrator's determination was

---

[1]     When considering a conflict of interest, the Eleventh Circuit has held:  The beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest might conflict with the interest of the beneficiary. A conflicted fiduciary may favor, consciously or unconsciously its interest over the interest of the plan beneficiaries.  The standard of review for a fiduciary operating under a conflict of interest remains arbitrary and capricious with a significantly diminished degree of deference. Although [e]ven a conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interest of the participants and beneficiaries, the burden shifts to the  fiduciary to prove that is interpretation of plan provisions committed to its discretion was not tainted by self-interest.  <u>Adams v.Thiokol Corp.</u>, 231 F.3d 837, 842 (11th Cir. 2000) (citing <u>Brown v. Blue Cross Blue Shield of Alabama, Inc.</u>, 898 F.2d 1556, 1568 (11th Cir. 1990)).  If the fiduciary succeeds in proving this burden, the opposing party 'may still succeed if the action is arbitrary and capricious by other measures.'  <u>Adams</u>, 231 F.3d at 842.

wrong).   When assessing the correctness of the administrator's decision,   the Court's inquiry is limited to the administrative record known to the administrator when the decision to deny the LTD benefits was made. <u>Jett v. Blue Cross and Blue Shield of Alabama, Inc.</u>, 890 F.2d 1137, 1139 (11th Cir. 1989).  Only after the *de novo* review if the Court determines that the  administrator is wrong, does it then look for a conflict of interest.  <u>HCA Health Servs. of Georgia, Inc.</u>, 240 F.3d at 993.

If the Court determines that the administrators decision was wrong, the Court must then decide whether the claimant has proposed a reasonable interpretation of the plan. <u>Lee v. Blue Cross Blue Shield of Alabama</u>, 10 F.3d 1547, 1550 (11th Cir. 1994).   Assuming the claimant's interpretation is reasonable, the Court then turns to whether or not the administrator's wrong interpretation of the plan is nonetheless reasonable. <u>HCA Health Servs. of Georgia</u>, 240 F.3d at 994. A plan administrator's wrong but reasonable interpretation of the plan is entitled to deference, even in light of the claimant's reasonable interpretation, unless the administrator suffers from a conflict of interest.  <u>Id.</u>  The Plaintiff's reasonable interpretation does not trump the administrator's wrong interpretation. <u>Id.</u> The principles governing the administrator's decision are similar to the principles of trust law which state that the administrator's interpretation will not be disturbed if it is reasonable. <u>Firestone Tire and Rubber Co.</u>, 489 U.S. at 110-111.

The first step for the Court in an ERISA action is to conduct a  *de novo* review of the administrative record to determine if the administrator's decision was right or wrong. <u>Williams v Beelsouth Telecommuncations, Inc.</u>, 373 F.3d 1132, 1138 (11th Cir. 2005); <u>HCA Health Servs. of Georgia,</u> 240 F.3d at 993. The Court will review *de novo* the Defendant's initial decision to discontinue the Plaintiff's LTD benefits.  If after a *de novo* review of the administrative record, the Court determines that the administrator was wrong, the Court will review whether or not the arbitrary

and capricious standard or the heighten arbitrary and capricious standard should be used. <u>Williams</u>, 373 F.3d at 1138.  However, in the instant case, the parties have agreed that the heighten arbitrary and capricious standard of review is the appropriate standard (Doc. # 19)  if, after the Court's *de novo* review, the Court determines that Continental's decision was wrong.

## **DISCUSSION**

The Plaintiff states that her benefits should be restored because: (1) Continental wrongfully investigated the Plaintiff because they mistakenly thought she was operating a yacht brokerage business out of her home; (2) Continental's employability assessment of the Plaintiff's medical condition was materially flawed; (3) the Plaintiff was found disabled by the Social Security Administration; (4) pursuant to the doctrine of *Contra Proferentem* the Plaintiff should be found disabled under the terms of the policy; (5) and finally that the Plaintiff did not receive copies of internal rules and guidelines, protocols, policies, procedures and/or other similar criteria used in administering the claim.  Continental responds that the medical and video evidence supports the decision, the Plaintiff's claimed medical conditions are insufficient to establish entitlement to benefits, and that under the "any occupation" terms of the policy the Defendant is not entitled to benefits.

### *(1) Whether Continental Wrongfully Investigated the Plaintiff*

The Plaintiff states that her benefits should not be revoked by the Defendant because they mistakenly thought she was operating a yacht brokerage business out of her home and therefore improperly began an investigation into her status.  The Plaintiff argues that the yacht brokerage business was actually being run by her sister out of the same address where the Plaintiff resided. Therefore, the Plaintiff argues that all further inquires should have ended at that point and her benefits

restored.   The Defendant responds that the use of video surveillance and their subsequent investigation was appropriate under ERISA.

The Plaintiff's benefits were subject to review at the end of twenty-four (24) months to determine if she was still eligible for LTD benefits. (Ar. H-8).  The Plan reads in pertinent part:

> *"Disability"* means that during the *Elimination Period* and the following 24 months *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that you are:
> 1.   Continuously unable to perform the *Material and Substantial Duites of Your Regular Occupation;* and
> 2.   not working for wages in any occupation for which Your are or become qualified by education, training or experience.

(Ar. H-8).  The Plaintiff became disabled under the terms of the Plan on January 9, 2002.  On January 4, 2004, the Plaintiff's benefits had been paid for a period of twenty-four (24) months.  At the end of the first twenty-four (24) months of benefit payments, the terms of the Plan call for a review of the Plaintiff's disability status.   The objected to video surveillance occurred in November of 2004.  Because the Plaintiff's benefits had been paid for twenty-four (24) months, the Defendant acted in compliance with the terms of the Plan by reviewing her disability status.  Additionally, the Plan also states that a beneficiary may be called upon at any time to supply proof of her continued status regarding her disability. (Ar. H-15).  Therefore, even if the Plaintiff's assumption is correct and the original impetus for the investigation was a suggestion that the Plaintiff was running a yacht brokerage business out of her home, the Defendant acted within the terms of the Plan when it investigated her.

In this instance, the video surveillance showed the Plaintiff moving crates of photo albums, setting up display tables, and generally performing the duties of a sales person for a period of time covering several hours.  The video surveillance further shows the Plaintiff going to the doctor and

generally running errands in and around town.  The Defendant presented the video evidence to medical experts and then relied on the experts evaluation of the video.  Reliance on video surveillance to document a plaintiff's functional capabilities during investigations regarding an individuals continued benefits is entirely appropriate under ERISA.  <u>DeLorenzo v. Hartford Life and Accident Insurance Co.</u>, 2006 WL 485119 *l (M.D. Fla. February 28, 2006) (citing <u>Turner v Delta Family - Care Disability and Survivorship Plan</u>, 291 F.3d 1270, 1274 (11th Cir. 2002)).  Thus, the timing of the Defendant's video surveillance, and the actual surveillance of the Plaintiff was not improper under ERISA.  Therefore, its is respectfully recommended that the Defendant's disability determination should not be overturned on that basis.

### <u>(2) Whether the Defendant's Employability Assessment Based on the Plaintiff's Medical Condition was Flawed</u>

The Plaintiff asserts that the Defendant's Employability Assessment does not provide a reliable assessment of her abilities and does not look at the medical evidence as a whole.  Therefore, the Plaintiff argues that her benefits should be restored because the Employability Assessment was flawed.  The Defendant states that the Plaintiff's benefits were properly terminated because multiple physicians opined the Plaintiff could return to some level of work.

The Plaintiff asserts the Defendant did not review the correct medical evidence but instead only scratched the surface of the Plaintiff's medical conditions.  However, contrary to her argument, the Defendant performed a thorough review of the Plaintiff's file and supported its determination with independent medical reviews and video surveillance.  In gathering information to make its disability determination, the Defendant sent copies of the Plaintiff's surveillance video along with her medical records to be independently reviewed by Medical Advisory Group (MAG).  Dr. Eric Hermannsen, M.D. reviewed the videos and spoke with Dr. Dosani, one of the Plaintiff's treating physicians, and

reported his medical findings to the Defendant.  Dr. Hermannsen opined the Plaintiff could work in a full-time capacity with limited aerobic activities, due to her ischemic heart disease and COPD. (Ar. H-168).  He also recommended that her walking and standing be limited to fifteen (15) minutes every two (2) hours. (Ar. H-168).  Dr. Hermannssen limited the position by stating that the Plaintiff should not have  a high mental functioning requirement, such as accounting or any position that would require calculating numbers or processing information in high volumes. (Ar. H-40, 63, 168).

In addition to Dr. Hermannsen, the Defendant sent surveillance videos and the Plaintiff's medical records to  the University Disability Consortium (UDC).  The UDC review was performed by Dr. Mark Freedman, M.D. a board certified physician in internal medicine.  Dr. Freedman reviewed the Plaintiff's medical reports and surveillance video, however, he was not provided with Dr. Hermannssen's report. (Ar. H-72-80).  Dr. Freedman opined "the evidence presented does not document functional restrictions/limitations as a result of any medical condition(s) that would preclude her from working 'any' work activity as of 6/15/05 and continue to the present." (Ar. H-77).

Under ERISA, the Insurer/Defendant may rely on its own independent medical examiners as opposed to the Plaintiff's treating physicians when making a disability determination. Stenner - Muzyka v. Unum Life Insurance Co. of America, 2005 WL 1610708 * 6 (M.D. Fla. July 7, 2005) (citing Turner v Delta Family Care Disability & Survivorship Plan, 291 F.3d 1270, 1274 (11th Cir. 2002) (holding that an ERISA plan affords discretionary authority to the administrator, and therefore, courts do not have to give deference to the opinions of treating physicians).  However, in this case, the Plaintiff's own treating physician, Dr. Dosani, opined that she could return to sedentary work (Ar. H-166), and Dr. Micovic opined the Plaintiff was doing well "with regard to neuralgic pain, was physically active, no apparent limitations with regard to sedentary to light activities." (Ar. H-75).

The Defendant also reviewed the Plaintiff's surveillance video. The video contained evidence that the Plaintiff could safely drive a car, lift boxes, set up tables at a sales display, and work in a sales position for several hours without any signs of pain or exhaustion. The Defendant was not in error by using the video surveillance to aid in making its determination that the Plaintiff had the ability to work under the terms of the policy. <u>DeLorenzo</u>, 2006 WL 485119 l at * 7.

In addition to the medical and surveillance review, the Defendant had a Vocational Rehabilitation Manager perform an Employability Analysis to identify occupations that the Plaintiff could perform. (Ar. H-41-42, 63, 83). The Vocational Analyst utilized America's Job Bank, O'net Online, and the U.S. Department of Labor Bureau of Labor Statistics Metropolitan Area Occupational Employment and Wage Estimates, to identify occupations in which the Plaintiff could readily be employed. The Employability Analysis determined the Plaintiff could be a dispatcher, an appointment clerk, or an information clerk. (Ar. H-63).

Furthermore, under ERISA, the plaintiff has the burden of proving her entitlement to contractual benefits. <u>Richards v. Hartford Life & Accident Insurance Co.</u>, 153 Fed. App. 694, 695 (11th Cir. 2005) (citing <u>Richards v Hartford Life & Accident Insurance Co.</u>, 356 F. Supp. 2d 1278 (S.D. Fla. 2004)). This burden remains with the Plaintiff whether the ERISA administrator denied her claim for benefits initially or determined at a later date to discontinue the benefits. <u>Hufford v Harris Corporation</u>, 322 F. Supp. 1345, 1360 (M.D. Fla. 2004). The Plaintiff failed to provide any evidence that would support her renewed claim.

Thus, after viewing the video surveillance and the medical reports viewed by the Defendant in making its decision to terminate the Plaintiff's benefits, the Court concludes that the Defendant's

assessment of the Plaintiff's employability was not flawed.  Therefore, it is respectfully recommended that the Defendant's decision not be disturbed on those grounds.

### (3) The Plaintiff was Found Disabled by the Social Security Administration

The Plaintiff argues the Defendant erred in its termination of benefits because the Social Security Administration found her to be totally disabled.  An Administrative Law Judge found the Plaintiff to be totally disabled from any occupation on May 28, 2003.

The approval of disability benefits by the Social Security Administration is not dispositive on the issue of whether a claimant satisfies the requirement for disability under an ERISA plan. Whatley v CNA Insurance Companies, 189 F.3d 1310, 1314 n. 8 (11th Cir. 1999) (citing Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1452 (11th Cir 1997). However, a district court may consider the Social Security Administration's determination of disability in reviewing a plan administrator's determination of benefits. Whatley, 189 F.3d at 1314 n. 8.  Nevertheless, benefit eligibility determinations by the Social Security Administration are not binding on ERISA disability insurers. Sullivan v Continental Casualty Co., 2006 WL 2054085 * 13 n. 9 (M.D. Fla. July 21, 2006) (citing Pari-Fasano v. ITT Hartford Life and Accident Insurance Co., 230 F.3d 415, 420 (1st Cir. 2000)). The reason Social Security determinations are not binding is because there are critical differences between the Social Security disability program and an ERISA benefit plan. Black & Decker Disability Plan v Nord, 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).

The Social Security Act creates a nationwide federally funded benefits plan superintended by the Commissioner of Social Security. Id. at 832-833.  The Commissioner has published detailed regulations to aide in coping with more than 2.5 million disability claims annually.  In contrast to the Social Security System, nothing in ERISA requires employers to establish employee benefit plans,

nor does ERISA require specific types of benefits. Id. at 833.  Instead, "employers have large leeway to design disability and other welfare plans as they see fit." Id.  In determining entitlement to Social Security benefits, the adjudicator measures the claimant's condition against a uniform set of federal criteria, while the validity of an ERISA claim depends upon the interpretation of the terms of the particular plan at issue. Id.  Thus, courts may not impose Social Security criteria upon ERISA plan administrators. Id.

Furthermore, the Social Security determination was made on May 28, 2003.  Since that time, the Plaintiff underwent an upper lobectomy with subsequent repair of a bronchopleural fistula and postoperative complaints of intercostal neuralgia and neuropathic pain in the left thoracic wall. (Ar. H-161-162).  Thereafter, the medical evidence demonstrates improvement in the Plaintiff's pain and ability to work.  In August of 2004, the Plaintiff's own treating physician Dr. Razak Dosani, M.D. stated that the Plaintiff could do some sedentary work. (Ar. H-301).  This is a marked improvement over the ALJ's determination in May of 2003.  Thus, even considering the ALJ's decision, the more current evidence in the record contradicts the Social Security Administration's ruling that the Plaintiff was totally disabled.  As a result, the Court finds that the Plaintiff's argument that the Court must consider the Social Security ruling to overturn the ERISA administrators termination of benefits lacks merit.

*(4) Whether the Doctrine of Contra Proferentem Overturns the Termination of Plaintiff Benefits*

When a plan is ambiguous, the doctrine of *Contra Proferentem* requires that the ambiguities be construed against the drafter of the document. HCA Health Services of Georgia, Inc. v. Employers Health Insurance Company, 240 F.3d 982, 994 n. 24 (11th Cir. 2001) (citing Lee v. Blue Cross Blue

Shield of Alabama, 10 F.3d 1547, 1551 (11th Cir. 1994).  The doctrine of *Contra Proferentem*

applies to ERISA plans.  HCA Health Services of Georgia, Inc., 240 F.3d at 994 n. 24.

      The Plaintiff asserts the doctrine of *Contra Proferentem* applies to the instant case.  As

grounds, she cites to the Plan which states as follows:

> After the Monthly Benefit has been payable for 24 months, "Disability" means
> that injury or Sickness causes physical or mental impairment to such a degree
> of severity that you are
> 1.    continuously unable to engage in any occupation for which You are
>     or become qualified by education, training, or experience, and
> 2.    not working for wages in any occupation for which You are or
>     become qualified by education, training, or experience.

(Ar. H-8).

In addition, the Plaintiff also cites to the Plans Earnings Qualifier which states in pertinent part:

> You may be considered Disabled during and after the Elimination Period in
> any Month in which You are Gainfully Employed, if an Injury or Sickness is
> causing physical or mental impairment to such a degree of severity that You
> are unable to earn more than 80% of Your Monthly Earnings in any
> occupation for which you are qualified by education, training, or experience.
> On each anniversary of Your Disability, We will increase the Monthly
> Earnings by the current annual percentage increase in the CPI-W or 10%.

(Ar. H-8).  The Plaintiff argues that the terms "continuously unable to engage in any occupation for

which You are or become qualified by education, training, or experience" should be construed to

mean the Plaintiff is required to be engaged in full-time regular employment at that occupation.  The

Plaintiff asserts that her interpretation of the Plan is reasonable.  The Plaintiff argues that since they

have proposed a reasonable alternative to the Defendant's explanation to the Plan's terms, the

doctrine of *Contra Proferentem* must be applied to construe the Plan in favor of her interpretation.

      Because ERISA is silent on matters of contract interpretation, the courts follow federal

common law for guidance.  Smith v. Home Depot Welfare Benefits Plan, 2006 1980284 (M.D. Fla.

July 12, 2006) (citing Dixon v. Life Insurance Co. North America, 389 F.3d 1179, 1183 (11th Cir.

2004).  The ordinary rules of contract construction require the court first to assess the natural or plain

meaning of the policy language, striving to give meaning to every provision. Smith, 2006 1980284

at *7 (citing Dahl-Eimers v. Mutual of Omaha Life Insurance Co., Inc. v. U.S. Fidelity & Guaranty

Co., 986 F.2d 1379, 1382 (11th Cir. 1983)).[2]  "An insurance contract is ambiguous if it is susceptible

to two or more reasonable interpretations that can fairly be made. . . .  When one of these

interpretations results in coverage and another results in exclusion, ambiguity exists in the insurance

policy." Smith, 2006 1980284  at *7 (quoting Dahl-Eimers, 696 F.2d at 1381).  "For the existence

of ambiguity, however, there must be a genuine inconsistency, uncertainty, or ambiguity in meaning

that remains after the court applies the ordinary rules of construction." Smith, 2006 1980284  at *7.

Additionally, an ambiguity does not necessarily exist because a contract requires interpretation or a

contract fails to define a term. Id.

The Plaintiff's argument lacks merit because it is based upon an unreasonable assumption and

also does not allow for the Plans medical disability requirements which must also be applied to the

contract's construction.  The terms listed by the Plaintiff are qualified by the definition that "Disability

means that injury or Sickness causes physical or mental impairment to such a degree of severity that

you are unable to engage" in the employment activities as listed in Plan's subject section, not that you

---

[2]      "Although [the Dahal-Eimers] case was a non-ERISA case in which the Eleventh Circuit applied Florida law in construing an insurance contract, it is instructional in summarizing the law of ambiguity in contract interpretation." Smith, 2006 WL 1980284 *7 n.9. (citing Horton v. Reliance Standard Life Insurance Co., 141 F.3d 1038, 1041 (11th Cir. 1998)(holding that when crafting a body of common law, federal courts may look to the state law as a model because of the states' greater experience in interpreting insurance contracts and resolving coverage disputes).

are actually engaged in those full-time employment activities.  As noted above, the Defendant's independent medical experts have opined that the Plaintiff can in fact work and the video surveillance tapes demonstrate that the Plaintiff is capable of substantial activities without discomfort or pain. Therefore, the doctrine of *Contra Proferentem* is not applicable in this case.

### (5) Whether ERISA Administrator's Decision Should be Overturned Because the Plaintiff did not Receive Copies of Internal Rules and Guidelines

The Plaintiff alleges that her case was hampered because the Defendant did not produce the requested internal rules, guidelines, protocols, policies, procedures, and/or other similar criteria used in administering the claim. (Ar. H-111).  On December 29, 2005, the Plaintiff through Counsel wrote a letter to the Defendant appealing its termination of her long term disability (LTD) benefits. (Ar. H-111).  In that letter, the Plaintiff requested copies of the Defendant's internal rules, guidelines, protocols, policies, procedures, and/or other similar criteria used in administering her claim. (Ar. H-111).  The Defendant responded to the request on January 5, 2006, stating that Mike Dyenson, the Investigative Analyst who made the determination, provided the Plaintiff with a copy of the Plaintiff's claim file. (Ar. H-107).  The Defendant added the Plaintiff's claim file and the Plan were all that were used to make the decision to terminate the Plaintiff's LTD benefits. (Ar. H-107).  The Defendant closed its communication by stating that if the Plaintiff needed anything else she should contact the Defendant's Counsel. (Ar. H-107-108).   The Plaintiff now claims that as a result of her never receiving the documents, the Defendant's Motion should not be granted.

As grounds, the Plaintiff cites Cannon v Unum Life Insurance Company, 219 F.R.D. 211 (D. Me. 2004), for the proposition that these documents should have been produced.  However, the issue in Cannon was the Insurers failure to respond to properly pounded discovery requests.  The claimant in  Canon moved to compel documents that were requested via interrogatories and request for

production regarding certain internal procedures used by the Insurer to make claims determinations. internal procedures. Id. at 215-216.  The Court held that the Plaintiff had a right to those documents and granted the Motion to Compel.  However, in this instance, the Plaintiff never moved to open discovery, and never made formal discovery requests under the Federal Rules. The Plaintiff's Motion for Summary Judgment is not the proper instrument to argue discovery failures created by the Plaintiff's own inactions.

Nevertheless, the Plaintiff did have a right to the Defendant's internal rules, guidelines, protocols, policies, procedures.  Therefore, the issue is whether or not the Defendant violated its fiduciary duty to the Plaintiff.  An ERISA fiduciary has an affirmative duty to provide complete and accurate information as well as a duty to not misinform the plan's beneficiaries.  Jones v. American General Life and Accident Insurance Co., 370 F.3d 1065, 1072 (11th Cir. 2004)(citing Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300-1301 (3d Cir. 1993) (quoting Ervast v. Flexible Products Co., 346 F.3d 1007, 1016 n. 10 (11th Cir. 2003).  One of the principle purposes of ERISA is to protect the interests of participants and beneficiaries by establishing standards of conduct, responsibility, and obligation for fiduciaries and providing for appropriate remedies and ready access to Federal Courts. Jones, 370 F.3d at 1071 (citing Varity Corp. v. Howe, 516 U.S. 489, 513, 116, S. Ct. 1065, 134 L. Ed. 2d 130 (1996) (quoting 29 U.S.C. § 1001(b)).  "In furtherance of this general objective, ERISA section 404(a) obligates fiduciaries to discharge their duties solely in the interest of the participants and beneficiaries." Jones, 370 F.3d at 1071 (citing 29 U.S.C. § 1104(a) (internal quotes omitted)).  The Eleventh Circuit has recognized that this fiduciary status is "the highest known to law."  Jones, 370 F.3d at 1071.  It is undisputed that Continental is the fiduciary in this case.

The Plaintiff argues that had she needed the Defendant's internal procedures in order to properly prepare her case. The Plaintiff did requested a copy of the documents and the Defendant responded that she had all of the information. However, the Plaintiff was not seeking the file but the Defendant's own internal documents which were apparently not provided.

ERISA provides for certain civil causes of action which may be brought by ERISA plan participants or beneficiaries. ERISA § 502(a)(1)(B) provides in pertinent part that "a civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due under the terms of the plan, to enforce rights under the terms of the plan or to clarify rights to future benefits under the terms of the plan . . . ." Katz, 197 F.3d at 1089 (citing 29 U.S.C. § 1132(a)(1)(B). There are three distinct remedies available to a participant or beneficiary under § 502(a)(1)(B): (1) action to recover accrued benefits; (2) an action to obtain a declaratory judgment that he is entitled to benefits under the provisions of the plan contract; and (3) to enjoin the plan administrator from improperly refusing to pay benefits in the future. Heffner, 443 F.3d at 1338. However, Congress did not provide a remedy for breaches of fiduciary obligations in the remedial provisions of ERISA found in Sections 502(a)(1) and (a)(2). Jones, 370 F.3d at 1071.

The Supreme Court in Varity Corp. v. Howe, recognized a cause of action under ERISA's Section 502(a)(3), ERISA's catchall provision, which authorizes plan participants and beneficiaries to maintain an action to obtain appropriate equitable relief to redress violations of ERISA or the terms of an ERISA governed plan. 516 U.S. at 512; Heffner v. Blue Cross Blue Shield of Alabama, Inc., 443 F.3d 1330, 1340 (11th Cir. 2006). The purpose of § 502(a)(3) is to act as a safety net offering appropriate equitable relief for injuries caused by violations of ERISA that §§ 502(a)(1) or (a)(2) do not address or adequately remedy. Varity, 516 U.S. at 512. Therefore, the central focus of this

inquiry involves whether or not the ERISA statutory framework offers a remedy for the alleged injury. If there is an adequate remedy under the remedial provision of Sections 502(a)(1) and (a)(2), then § 502(a)(3) does not apply. Ogden v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284, 1285 (11th Cir. 2003); Katz v. Comprehensive Plan Group Insurance, 197 F.3d 1084, 1090 (11th Cir. 1999) (holding that oral modification of life insurance benefit did not give Plaintiff relief under § 502(a)(3) because she could seek relief under ERISA's other provisions).

As noted above, the Court's concern in Varity, was whether or not the plaintiff had an avenue of relief under ERISA's other more remedial provisions, and if so then § 502(a)(3) would not apply to the plaintiff's claim.  Jones, 370 F.3d at 1073.  In this action, the Plaintiff seeks remedy under ERISA § 502(a)(1)(B) to recover benefits she alleges are due her under the terms of the Defendant's LTD Plan. (Complaint,  Doc. # 1 at 1 ¶ 1).  Should the Court rule that she is medically disabled under the terms of the Plan she could recover her benefits.  Because the Plaintiff has a remedy that could be resolved by receiving a benefit under the terms of Continental's LTD Plan she is not entitled to a recovery under §502(a)(3).

It does not matter if the Plaintiff's claim prevails, only that he has the opportunity to pursue the claim under one of ERISA's remedial provisions. Katz, 197 F3d at 1089.  The principle barring claims under § 502(a)(3) is true even if Continental breached its fiduciary duty to the Plaintiff by failing to provide copies of the internal documents requested by the Plaintiff in her letter of December 29, 2005. Jones, 370 F.3d at 1073.  Thus, the Plaintiff is prevented from bringing a breach of fiduciary duty claim under § 502(a)(3) for the Defendant's failure to provide internal documents. Jones, 370 F.3d at 1073 (holding that if the remedy for the plaintiff's injuries is an award of benefits under 502 (a)(1)(B), they cannot also bring claims under section 502(a)(3)); Ogden, 348 F.3d at 1285, 1287

(citing <u>Larocca v Borden, Inc.</u>, 197 F.3d 22, 28 (1st Cir. 2002) (holding that federal courts have uniformly concluded that if a plaintiff can pursue benefits under the plan pursuant to section (a)(1), there is an adequate remedy that bars further remedy under § 502(a)(3).  Therefore, it is respectfully recommended, the Defendant's Motion for Summary Judgment should be granted because the Plaintiff has no remedy under § 502(a)(3).

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

(1) The Defendant Continental Casualty Company's Dispositive Motion for Summary Judgment (Doc. # 20) should be **GRANTED.**

(2) The Plaintiff Mariann Kircher's Motion for Judgment on the Record (Doc. # 21) should be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days  from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this   27th   day of February, 2007.


SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record