UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARIANN KIRCHER,

          Plaintiff,

vs.                           Case No.  2:06-cv-119-FtM-29SPC

CONTINENTAL CASUALTY COMPANY,

          Defendant.
_____

**OPINION AND ORDER**

This matter is before the Court on consideration of Magistrate Judge Sheri Polster Chappell's Report and Recommendation (Doc. #28), filed February 27, 2007, recommending that Continental Casualty Company's Motion for Summary Judgment be granted. Plaintiff's Objections (Doc. #29) were filed on March 6, 2007, and defendant's Memorandum of Law in Opposition (Doc. #30) was filed on March 20, 2007.

**I.**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). In an Employee Retirement Income Security Act (ERISA) case such as this, a district judge essentially applies the same legal standard as did the magistrate judge. The parties have stipulated to that standard of review.

(Doc. #19.)  After review, the Court finds that the plan documents granted the administrator, Continental Casualty Company (Continental), discretion to make a benefits determination and that the determination was not "wrong," i.e., after a review of the decision from a *de novo* perspective, the Court does not disagree with Continental's decision.

## II.

At all relevant times plaintiff was covered by a group insurance policy (the Policy) issued by Continental Casualty Company (Continental) through her employment with Johnson Controls, Inc.  Plaintiff stopped working in July 2001, and applied for long term disability benefits under the Policy.  Plaintiff's claim was granted, and she received benefits beginning January 9, 2002.

Under the Policy, after plaintiff received disability benefits for twenty-four months she was required to demonstrate her continued disability as defined by the Policy.  In August 2004, plaintiff filed a Disability Claim Form (Ar H299-301) in which she stated that her condition was "some what stable - periods of rest still required during the day," that she had attempted employment as a counselor for a "very limited time" since becoming disabled, but had no plans to return to any occupation.  (Ar. H299.)  A portion of the form was completed by plaintiff's treating physician Dr. Razak Dosani, who stated plaintiff "can do some sedentary work like counseling on a limited basis," but was totally disabled and

he did not expect fundamental or marked change in the future.  (Ar. H301.)

In November 2004, Continental hired a private investigator who obtained video surveillance of plaintiff's daily activities.  In February, 2005, plaintiff gave a signed statement to an investigator from Continental (Ar. H586-593), and was shown the surveillance video (Ar. H603.)  In the statement plaintiff stated that a number of disabling medical conditions prevented her from returning to work (Ar. H586); described in detail her functional restrictions and limitations (Ar. H587-591); stated she had been involved in craft fairs that did not work out so well because it was too difficult for her to take her crafts to and from the craft show (Ar. H591); stated that she was prevented from returning to "any occupation" because of her various medical impairments (Ar. H592); stated there "are no accommodations that can be made which would allow me to return to work" (Ar. H592); stated she was "not able to do any kind of work, the way I feel at this time" (Ar. H592); and stated that she had "not worked for a company, store, person, business or self-employed business while on my Long-term Disability" and had "not received any income from any company, store, person, business, self-employed business or organization, which includes any money, barter or any other remuneration during my disability period."  (Ar. H592.)

Continental submitted plaintiff's medical records and the surveillance video to the Medical Advisory Group for independent

-3-

review.  After reviewing these items, and speaking with Dr. Dosani, the Medical Advisory Group reported that plaintiff could work full-time with limited aerobic activities, with walking and standing limited to 15 minutes every two hours, and in a position without a high mental functioning requirement.  Based on the Medical Advisory Group's report, a Continental found three specific types of jobs that plaintiff could perform.  On June 15, 2005, plaintiff was notified that she was no longer eligible for long-term disability benefits because she did not meet [the "Occupation Qualifier" portion of] the Policy's "disability" definition.  (Ar. H61-64.)

Plaintiff, now represented by counsel (Ar. H141), appealed this decision, asserting that plaintiff "disagrees with the conclusion that the weight of evidence does not support symptoms and impairments to such a degree as to preclude her from performing the material and substantial duties of any occupation, and wholeheartedly disagrees with the inferences [Continental] draws from its own surveillance."  (Ar. H111, 114.)

Continental performed a second review by sending plaintiff's medical file to University Disability Consortium.  This second review concluded that plaintiff was not precluded from working any sedentary work activity as of June 15, 2005 to the present.  On February 22, 2006, Continental notified plaintiff that its final determination of June 15, 2005 was correct and proper.  (Ar. H33-35.)

-4-

Unrelated to this action, plaintiff filed for Social Security Disability Benefits.  On May 28, 2003, an Administrative Law Judge found plaintiff was limited to sedentary work and was disabled under the Social Security Act.

**III.**

Plaintiff raises five objections to the Report and Recommendation: (1) Defendant, and the magistrate judge, utilized the wrong definition of "disability" in the determination of whether plaintiff continued to be disabled under the long-term disability Policy; (2) defendant utilized a Employability Assessment which was materially flawed because it failed to include all of plaintiff's disabling conditions, and the magistrate judge failed to address this specific document but rather looked to the record as a whole; (3) Plaintiff's "Fully Favorable Social Security Disability Determination" is evidence that the ERISA administrator's non-disability determination was not reasonable, and in combination with the other evidence establishes that the Administrator's decision is "wrong" within the meaning of the ERISA case law; (4) because the Policy is ambiguous, and plaintiff has a reasonable interpretation of the relevant provision, plaintiff's interpretation must be utilized; and (5) there is a remedy for defendant's failure to provide requested internal rules, guidelines, protocols, policies, procedures and other similar criteria used in administering the claim, and that remedy is an administrative remand for correction of the procedural error.

-5-

**(1) Definition of "disability":**

Plaintiff argues that Continental and the magistrate judge never applied the correct definition of "disability" under the Policy in making their respective decisions concerning her eligibility for continued long term disability benefits. Plaintiff asserts she continues to be disabled under the Earnings Qualifier portion of the definition of "disability" under the Policy, as opposed to the Occupation Qualifier portion which was used by Continental and the magistrate judge.

"Disability" is a defined term under the Policy, and "means that You satisfy the Occupation Qualifier or the Earnings Qualifier as defined below." (Ar. H8.) See also Glossary definition (Ar. H18.) It is thus clear, and not disputed, that plaintiff must satisfy only one of the two components of "disability."

The "Occupation Qualifier" which applies to plaintiff states as follows:

> "*Disability*" means that during the *Elimination Period* and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
> 1. continuously unable to perform the *Material and Substantial Duties of Your Regular Occupation*; and
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.
>
> After the *Monthly Benefit* has been payable for 24 months, "*Disability*" means that *Injury or Sickness* causes physical or mental impairment to such a degree of severity that *You* are:

> 1.  continuously unable to engage in any occupation for
> which *You* are or become qualified by education, training
> or experience; and
> 2.  not working for wages in any occupation for which *You*
> are  or  become  qualified  by  education,  training  or
> experience.

(Ar. H8.)  As discussed in more detail below, this is the only

component of the "disability" definition relied upon by plaintiff

during her proceedings with Continental and, until recently, in the

instant lawsuit.

The  "Earnings  Qualifier"  portion  of  the  definition  of

"disability" under the policy provides as follows:

> You may be considered *Disabled* during and after the
> *Elimination  Period*  in  any  Month  in  which  *You*  are
> *Gainfully Employed*, if an *Injury* or *Sickness* is causing
> physical  or  mental  impairment  to  such  a  degree  of
> severity that *You* are unable to earn more than 80% of
> Your *Monthly Earnings* in any occupation for which *You* are
> qualified by education, training or experience.  On each
> anniversary of *Your Disability*, *We* will increase the
> *Monthly  Earnings*  by  the  lesser  of  the  current  annual
> percentage increase in CPI-W, or 10%.
>
> You are not considered to be *Disabled* if *You* earn more
> than  80%  of  Your  *Monthly  Earnings*.   Salary,  wages,
> partnership or proprietorship draw, commissions, bonuses,
> or similar pay, and any other income You receive or are
> entitled  to  receive  will  be  included.   Sick  pay  and
> salary continuance payments will not be included.  Any
> lump sum payment will be prorated, based on the time over
> which it accrued or the period for which it was paid.

(Ar. H-8.)  "Gainful Employment" or "Gainfully Employed" means "the

performance of any occupation for wages, remuneration or profit,

for which You are qualified by education, training or experience on

a  full-time  or  part-time  bases,  for  the  Employer  or  another

-7-

employer, and which We approve and for which We reserve the right to modify approval in the future." (Ar. H18.)

Continental based its decision that plaintiff was no longer disabled on the Occupational Qualifier portion of the Policy's disability definition. (Ar. H61-64.) The reason for this is clear: Even liberally construing plaintiff's claim because of her then-*pro se* status, plaintiff only claimed to be disabled under this portion of the disability definition, and never asserted that the Earnings Qualifier was applicable to her at all. Plaintiff's August 2004 Disability Claim Form stated plaintiff had no plans to return to any occupation; plaintiff's signed statement in February 2005, after being shown the surveillance video, stated that plaintiff had not worked, was not working and could not work in any occupation. The administrative appeal by plaintiff's counsel cited only plaintiff's disagreement with Continental's decision that plaintiff was not precluded from performing the material and substantial duties of any occupation. Neither plaintiff nor her attorney ever asserted to Continental that the Earnings Qualifier was a basis upon which plaintiff claimed to be disabled.[1] Continental need not consider a disability definition which plaintiff's claim did not implicate, any more that it needed to

---

[1]Counsel's statement in plaintiff's Motion for Judgment on the Record that "Plaintiff has not denied" that she could do some sedentary work on a limited basis Doc. #17, pp. 16-17) is simply incorrect. Plaintiff repeatedly denied such an ability in her signed statement to the Continental investigator.

consider impairments which were not asserted by plaintiff. Therefore, both Continental and the magistrate judge applied the correct definition of "disability" in this case.

Assuming the applicability of the Earnings Qualifier is not required to have been administratively exhausted[2], the record contains no evidence that plaintiff satisfied the Earnings Qualifier. The Earnings Qualifier requires that plaintiff be "gainfully employed." Frados v. Cont'l Cas. Co., 363 F. Supp. 2d 1349, 1359-60 (S.D. Fla. 2005). There is no evidence in the administrative record suggesting plaintiff was gainfully employed (indeed plaintiff's evidence was to the contrary), or the level of remuneration, or that plaintiff had notified Continental of the gainful employment, or that Continental had approved the occupation, or that plaintiff desired to be considered under the Earnings Qualifier. The first time plaintiff mentions the Earnings Qualifier is through her attorney in her Motion for Judgment on the Record. (Doc. #17, p. 17.) After citing the Occupation Qualifier portion as "the definition of disability at issue," (Doc. #17, pp. 16-17), plaintiff quotes the Earnings Qualifier and asserts that its language is inconsistent with Dr. Dosani's statement that

---

[2]Cf. United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33 (1952)(administrative issue exhaustion generally required); Sims v. Apfel, 530 U.S. 103 (2000)(administrative issue exhaustion not required in Social Security disability determination); Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)(critical differences exist between Social Security disability program and ERISA benefit plans).

plaintiff had the ability to do "some limited work on a sedentary basis."  In plaintiff's Objections, counsel states that plaintiff "can work . . . [but] can not work full-time" (Doc. #29, p. 5) and "Ms. Kircher does not deny residual functional capacity to do some sedentary work on an occasional basis" (Doc. #29, p. 8).  The only evidence in the administrative record from plaintiff, as discussed above, is that she asserted contrary positions to Continental. Statements by plaintiff's counsel are not evidence, and the administrative record contains no evidence which would support the Earnings Qualifier portion of the disability definition.  The Court overrules plaintiff's objection to the Report and Recommendation.[3]

**(2) Flawed Employability Assessment:**

Plaintiff argues that Continental's reliance on the Assessment of Employability was error because it failed to list many of plaintiff's medical impairments.  The document listed plaintiff's relevant medical conditions as HTN, heart disease, and an aneurism, without considering other ailments.  Plaintiff argues that additional disabling medical conditions include chronic pain, severe chronic obstructive pulmonary disease, impaired memory secondary to a series of transient ischemic attacks, the partial removal of a lung secondary to lung cancer and re-surgery secondary to extended complications with residual pain from these conditions,

------

[3]The Court finds no ambiguity in the policy or its definitions, and therefore agrees with the Report and Recommendation that the doctrine of *Contra Proferentem* does not apply in this case.

hypertensive cardiovascular disease, Stage III coronary artery disease, hyperlipidemia, peripheral vascular occlusive disease, status post-cerebral vascular accident, chronic obstructive pulmonary disease, visual migraines, and white matter artifacts consistent with demyelinating changes. Reliance upon this incomplete document, plaintiff argues, renders the entire determination by Continental erroneous.

The record reflects that Continental, and the magistrate judge, considered much more than the Assessment of Employability form in arriving at its determination. The record fully supports the Report and Recommendation's summary of the material reviewed by Continental and that the totality of the evidence supports the termination of benefits decision. (Doc. #28, pp. 10-13.) The objection is overruled.

**(3) Favorable Social Security Disability Determination:**

Plaintiff argues that a favorable decision by the ALJ is relevant evidence and permits the inference that the Continental decision was not reasonable. The Report and Recommendation did not see the law in any different manner; rather, it considered the ALJ's decision along with the more current medical evidence and found that the evidence supported Continental's decision. (Doc. #28, pp. 13-14.) The Court agrees with the Magistrate Judge's assessment, and the objection is overruled.

**(4) Administrative Remand Due to Procedural Error:**

-11-

Plaintiff argued that she had requested a copy of Continental's internal rules guidelines, protocols, policies and other similar criteria, that she was never provided with these documents, and that this procedural error required an administrative remand. The Report and Recommendation found that plaintiff was asserting a claim for breach of fiduciary duty, and that existing case law precluded any relief for such a claim. Plaintiff does not dispute the case law relied upon by the Report and Recommendation, but rather asserts that it is not *apropos* because she did not bring a claim for breach of fiduciary duty. (Doc. #29, pp. 3, 14-16.)

The Complaint alleges that Continental is a fiduciary, as well as the administrator of the ERISA plan. (Doc. #1, ¶¶ 8, 9.) To the extent plaintiff's claims can be construed as including a breach of fiduciary duty, the Court will adopt the legal conclusion in the Report and Recommendation. Plaintiff does not contest the law as set forth therein, but essentially argues that the Report and Recommendation missed the point of her claim. Accordingly, in the alternative, the Court will accept plaintiff's statements that her claims do not include a breach of fiduciary duty and will address plaintiff's argument that there was a procedural violation which merits an administrative remand.

The following relevant facts are set forth in the administrative record. On September 29, 2005, counsel for plaintiff sent a Letter of Representation (Ar. H141-142) to

-12-

Continental.  As relevant to this issue, this letter requested "a complete copy of the insurance policies pursuant to which these benefits are provided, any and all summary plan descriptions, employee handbooks, or other ERISA plan documents relevant to this client's rights under the plan, along with any other documents you may have relating to this claim."  The letter asserted that plaintiff was requesting a complete copy of the administrative record pursuant to 29 C.F.R. § 2560.503-1(h)(2).  The letter continued that the request included three specific categories of document and "4) Internal rules, guidelines, protocols, policies, procedures, and/or other similar criteria in administering the claim."

In an Appeal (Ar. H110-110) faxed to Continental on December 29, 2005, counsel stated in part: "We note that we have requested and yet to receive 'internal rules, guidelines, protocols, policies, procedures, and/or similar criteria in administering the claim,' and look forward to receipt of same."  None of the other requested documents were mentioned.  In a January 5, 2006 letter (Ar. H27-28), Continental stated that on October 4, 2005 its investigative analyst provided counsel with a copy of plaintiff's claim file; that the contents of the claim policy and the insurance policy would be the basis for the claim decision, and if counsel felt he still had not been provided that information he should contact the letter's author.  No such contact is demonstrated in the administrative record.

-13-

The pertinent statute requires each ERISA plan to give a claimant the "reasonable opportunity" for "a full and fair review of . . . of the decision denying the claim." 29 U.S.C. § 1133(2). This requires that a claimant "shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). The relevance of any such document, record or other information is determined under 29 C.F.R. § 2560.503-1(m)(8), which addresses various definitions. 29 C.F.R. § 2560.503-1(h)(2)(iii). A document, record, or other information is "relevant" to the claim if it: (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether it was relied upon in making the benefit determination; (iii) demonstrates compliance with the administrative processes and safeguards required by 29 C.F.R. § 2560.503-1(b)(5) in making the benefit determination; or, (iv) in the case of a disability benefits plan, constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination. 29 C.F.R. § 2560.503-1(m)(8)(i)-(iv). The Court will assume, for purposes of this review, that the portion of the Report and Recommendation which states that "the Plaintiff did have a right to the Defendant's internal rules, guidelines,

-14-

protocols, policies, procedures" (Doc. #29, p. 18) is accurate at least under 29 C.F.R. § 2560.503-1(m)(8)(iv).

While a ERISA plan beneficiary has a cause of action against an administrator such as Continental for failing to comply with a request for information required to be disclosed, neither of the claims in plaintiff's Complaint (Doc. #1) state such a cause of action.  A portion of ERISA provides that "A civil action may be brought - (1) by a . . . beneficiary - (A) for the relief provided for in subsection (c) of this section, . . ."  29 U.S.C. § 1132(a)(1)(A).   Subsection (c) in turn provides that any administrator who fails or refuses to comply with a request for any required information within thirty days may be personally liable for up to $100 a day or such other relief as the court deems proper.  29 U.S.C. § 1132(c)(1)(B); Hunt v. Hawthorne Assocs., 119 F.3d 888, 914 (11th Cir. 1997), cert. denied, 523 U.S. 1120 (1998). Both the counts in the Complaint are brought under § 1132(a)(1)(B), as they specifically state, not § 1132(a)(1)(A).

The general rule is that "under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in [29 U.S.C. § 1132(a)(1)(A)]."  Ackerman v. Warnaco, Inc., 55 F.3d 117, 124 (3d Cir. 1995).  Exceptions to the general rule have been noted.  "Technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside § 1132(c) unless there are some exceptional circumstances, such as

bad faith, active concealment, or fraud." <u>Watson v. Deaconess
Waltham Hosp.</u>, 298 F.3d 102, 113 (1st Cir. 2002)(citing cases).  In
this case, there are no such exceptional circumstances either pled
in the Complaint or demonstrated by the administrative record.
Indeed, quite the contrary is demonstrated.  Continental clearly
stated in its initial June 15, 2005 determination and its February
22, 2006 reconsideration that plaintiff was entitled to a free copy
of "relevant documents" (Ar. H119, H34), and the correspondence
summarized above shows a good faith effort to resolve any
misunderstanding or dispute regarding the one category of
documents.

To the extent that a disclosure violation can be relevant to
the review of the benefits decision under § 1129(a)(1)(B), some
adverse impact on the beneficiary's ERISA rights must be shown.
The Eleventh Circuit has noted that "several federal circuits have
denied remedial relief for technical violations of ERISA's
statutory requirements absent a showing that the violations had
adversely affected the plaintiffs' ERISA rights." <u>Perrino v.
Southern Bell Tel. & Tel. Co.</u>, 209 F.3d 1309, 1318 n.9 (11th Cir.
2000). <u>See also</u> <u>Eldridge v. Wachovia Corp. Long-Term Disability
Plan</u>, No. 06-12193, 2007 WL 117712, 2007 U.S. App. LEXIS 1004 (11th
Cir. Jan. 18, 2007)(no abuse of discretion in failing to impose any
penalty for failure to provide certain plan documents where
plaintiff failed to explain any prejudice fro the failure to
provide the documents); <u>Counts v. American Gen. Life & Accident</u>

-16-

<u>Ins. Co.</u>, 111 F.3d 105, 109 (11th Cir. 1997)(ERISA administrator's failure to answer requests for information about benefits decision did not justify failure to exhaust where plaintiff was not denied meaningful access to the administrative review process); <u>Anderson v. Ciba-Geigy Corp.</u>, 759 F.2d 1518, 1521 (11th Cir. 1985) (procedural errors in an ERISA plan's management does not change the appropriate standard of review).  Other circuits, however, have held that "reporting and disclosure violations are irrelevant in determining plaintiffs' entitlement to benefits under the terms of [a ERISA plan]."  <u>Hozier v. Midwest Fasteners, Inc.</u>, 908 F.2d 1155, 1170 (3d Cir. 1990).

Assuming a disclosure violation can have relevance to a review of a denial of benefits under § 1129(a)(1)(B), plaintiff has failed to make the required showing in this case.  In this case Continental informed plaintiff that its decision was based on the language in the long term disability policy, and quoted the pertinent provision.  (Ar. H61.)  Continental further advised plaintiff that the decision was based on the information contained in her file, and "[a]ll documents contained in your file were viewed as a whole."  (Ar. H61, H63.)  After identifying and summarizing the information in plaintiff's file, Continental stated that plaintiff "no longer meet the Definition of Disability as defined by the Long Term Disability policy," and here claim for long term disability benefits was terminated effective June 15, 2005.  (Ar. H63.)  Upon reconsideration, Continental stated that

the issue was whether plaintiff continued to meet the requirements under the terms of the policy for disability benefits. (Ar. H33.) Continental stated that a review of the record established that there was a time period during which plaintiff was disabled, but that the ongoing information established her condition had improved. Continental found that its June 15, 2005 decision was correct and proper. The administrative record does not reflect that plaintiff's counsel ever contacted Continental to follow-up on its offer to discuss any perceived document issue. There is no record that any such documents actually exist. Assuming some documents do exist, the administrative record clearly establishes that they were not relevant or material to the determination. Plaintiff knew, because Continental repeatedly told her, that the decision was based upon the language of the Policy, the medical information provided, the surveillance video, and the review by medical experts. Nothing was hidden; Continental's decision either survives or fails based upon a review of this data. Plaintiff has not shown any prejudice, or lack of access to the administrative process, or impact of any kind resulting from the alleged failure to disclose policies, procedures, etc other than in the Policy. This objection is overruled.

After conducting an independent examination of the file and upon due consideration of the Report and Recommendation, the Court accepts the Report and Recommendation of the magistrate judge.

Accordingly, it is now

ORDERED:

1.   The Report and Recommendation is hereby **adopted** and plaintiff's objections are **overruled**.

2.   Defendant's Dispositive Motion for Summary Judgment (Doc. #20) is **GRANTED** and plaintiff's Motion for Judgment on the Record (Doc. #21) is **DENIED.**

2.   The Clerk shall enter judgment in favor of defendant and against plaintiff, terminate all pending deadlines as moot, and close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___23rd___ day of April, 2007.


_____

JOHN E. STEELE
United States District Judge


Copies:
Hon. Sheri Polster Chappell
United States Magistrate Judge

Counsel of Record

-19-